7105

STATE v. HUNTER.

1. JUDICIAL NOTICE.—Circuit Court should take judicial notice of all orders of record made in the progress of a cause and the Supreme Court will take judicial notice of its own orders and decrees made in the case on former appeals. Here the Supreme Court takes judicial notice that an opinion affirming an order of change of venue was filed on a certain day and presumes the remittitur was filed in the Court below within ten days thereafter.

2. EXCEPTIONS.—That record does not show finding by grand jury or that case was on the docket in the county to which it had been transferred cannot be raised for first time in this Court on appeal.

3. EVIDENCE—CONTRADICTION—ADMISSIONS—RES GESTAE.—Witness may be contradicted as to a statement of what the defendant in a murder case said to him immediately after the homicide. Defendant should be permitted to deny such statement, but should no be permitted to detail the conversation as part of the *res gestae*.

4. IBID.—CROSS-EXAMINATION.—Defendant may be required on cross-examination by solicitor to demonstrate the position and the acts of the parties at the time of the killing, although he had made a demonstration in his examination in chief.

5. CHARGE—SELF-DEFENSE.—Portion of charge here excepted to substantially states the doctrine that a man who uses language so opprobious that a reasonable man would expect to bring on a physical

encounter, and which did actually contribute thereto, cannot set up plea of self-defense.

6. SENTENCE—PRESUMPTIONS.—Where the record is silent as to the usual formalities in passing sentence in a criminal case, it will be presumed they were carried out.

Before GAGE, J., Greenwood, February, 1908. Affirmed.

Indictment against G. Wash Hunter for murder of Elbert F. Copeland. Defendant appeals from sentence on verdict of manslaughter.

*Messrs. Richey & Richey* and *Cole L. Blease,* for appellant. *Court of General Sessions for Greenwood county had no jurisdiction of this case:* Secs. 2 and 5, art. VI, Con.; sec. 1, art. XIV, Amd. Con. U. S.; sec. 1, arts. V and VI, Amd. U. S. Con.; sec. 5, art. I, Con.; Code of Proc., 27, 30; 76 S. C., 105; 7 S. C., 372; Code of Proc., 147; 74 S. C., 512; Code 1902, 2735; 38 S. C., 399; 72 S. C., 574; Acts 1905, p. 845; sec. 17, art. III, Con.; Senate Rule XLIV; House Rule XXXI; sec. 12, art. III, Con.; 28 S. E., 529; 37 S. E., 45; 184 U. S., 540; 79 S. C., 9. *Want of jurisdiction cannot be waived:* 53 S. C., 202; 4 Park., 386; 50 Cal., 547; 13 Pa. St., 627; 53 Fed., 18; 82 Wis., 644; 19 S. C., 218; 25 S. C., 385; 28 S. C., 313; 37 S. C., 413; 39 S. C., 369; 79 S. C., 557; 74 S. C., 438, 72. *This Court will not take judicial notice of its opinion previously rendered herein:* 79 S. C., 92; 13 Bush., 419; 14 Ia., 131; 54 Ia., 551. *Contradiction on irrelevant matter is error:* 33 S. C., 592; 55 S. C., 43; 78 S. C., 537; 68 S. C., 309; 73 S. C., 60; 4 Ell. on Ev., 3030. *Charge deprived defendant of plea of self-defense:* 75 S. C., 510; 73 S. C., 60; 23 Ala., 17; 38 S. E., 648; 9 Neb., 157; 47 Ala., 564; 81 Ind., 176; 18 Ky. Law R., 728; 67 A., 150; 5 Penn., 192.

*Solicitor R. A. Cooper* and *Ferguson & Featherstone,* contra. No citations.

February 23, 1909.  The opinion of the Court was delivered by

MR. JUSTICE WOODS.  The defendant, G. Wash Hunter, was indicted in the Court of General Sessions for Laurens county on the charge of the murder of Elbert F. Copeland in that county.  An order was made changing the venue from Laurens county to Greenwood county, which on appeal was affirmed by this Court, 79 S. C., 91, 60 S. E., 266.  The trial in Greenwood county resulted in the defendant being convicted of the crime of manslaughter and sentenced to the penitentiary for the term of eight years.  From this judgment, defendant appeals; his first position being that the Court of General Sessions for Greenwood county had no jurisdiction of an offense committed in Laurens county.  There is no foundation for this position, except the absence from the record in this appeal of any statement that there was an order for a change of venue, and the admission of the solicitor made in writing at the hearing that neither the order changing the venue nor the remittitur from the Supreme Court was read at the trial. It is too obvious for argument that on the trial the Circuit Court should take judicial notice of all orders of record made in the progress of the cause, including the remittitur from this Court on appeal; and that the Supreme Court should take judicial notice of its own orders and decress made in a former appeal in the same cause.  The decree of this Court affirming the order for a change of venue was filed 13th February, 1908; the rule requires the remittitur to be sent down in ten days after the final decree, and the presumption, therefore, is that it was filed in the Court of General Sessions for Laurens county before the trial, which began on 24th February, 1908.  This presumption is strengthened by the fact that defendant's counsel entered on the trial without objection to the jurisdiction.

The contention that the judgment should be reversed because the record does not show that the grand jury had

found a true bill, nor that the cause had been docketed for trial in Greenwood county, requires no further notice than to say that no such positions were taken in the Circuit Court, and, the presumption is, that the Court of General Sessions would not have tried the defendant without a true bill by the grand jury.

Error is next imputed to the Circuit Court with respect to the admission of testimony. The homicide was committed by the defendant while he and the deceased were playing cards, and the main issue was on the plea of self-defense. On cross-examination, J. Rhett Copeland, a witness on behalf of defendant, testified that when the defendant came to his house the morning of the homicide he said nothing except "ride over to Lee's." The witness was then asked this question as to what he said to A. M. Copeland and W. B. Owens when he went to Lee Hunter's on the same morning: "Did you not state in substance this: That Wash Hunter came to my house this morning and told me to go over to Lee Hunter's, that he had played hell over there; that Wash didn't tell you what he had done, but that you thought he had killed Lee; that he was drinking and you knew what a fool he was when drinking?" The witness denied making the statement. Thereafter the solicitor was allowed to contradict him by testimony of A. M. Copeland and W. B. Owens that he did make the statement embraced in the question above quoted. The objection to this testimony rested on the position that the contradiction was on an immaterial and irrelevant issue, but we think with the Circuit Judge that this could not be so, because any admissions or confessions made by defendant to the witness, J. Rhett Copeland, were not only relevant, but very material. Evidence of such admissions would have been direct and positive evidence on the vital issue, and contradiction with respect to them was admissible. The defendant was allowed to deny that he made the statement to J. Rhett Copeland referred to in the ques-

tion above quoted, but the Circuit Judge was clearly right in not allowing him to detail, as a part of the *res gestae,* his conversation with J. Rhett Copeland, which did not occur until the defendant had mounted his horse and ridden two miles after committing the homicide. *State* v. *McDaniel,* 68 S. C., 311, 47 S. E., 384.

It is next contended the Circuit Court was in error in allowing the solicitor on cross-examination of the defendant to ask him to sit at a table and demonstrate how the crutch was used, where the knife was lying, how it was seized by deceased, where those present were sitting, and the position of deceased when he received the fatal shot. The defendant on his own behalf had already undertaken to make ocular demonstration with his hands and arms how the deceased, sitting with him at the card table, had first struck him with a crutch, and then with an open knife in his hand threatened to cut defendant's throat. After taking the stand in his own behalf, the defendant was in the same position as any other witness, and there could be no legal objection to the solicitor testing the accuracy of his demonstration by asking him to make it while sitting at a table, as he was when the tragedy was enacted.

Exception is taken to the following instruction on the subject of self-defense: "I charge you that if a man picks a quarrel with his fellow and kills his fellow, the law denies him the plea of self-defense. And I charge you further that if the defendant, Wash Hunter, used language towards Elbert Copeland that a reasonable man would expect to bring on a fight, then the law denies him the plea of self-defense. Put yourselves, gentlemen, by the table in that room with these parties. Take up the transaction in its inception. Did Wash Hunter say anything that was reasonably calculated to bring on a fight? Did what he say actually contribute to bringing on a fight? If so, the law denies him the shield of self-defense. If he did not do that, the law puts the shield of self-defense in his

hand.   If he is denied the plea, it falls to the ground, and you consider it no longer.   If you sustain the plea, why, he goes hence without delay, free from the penalties of the law."   This instruction, while not in the precise words, expresses the principle laid down in *State* v. *Rowell,* 75 S. C., 510, 56 S. E., 23, in this sentence: "The true rule is that the plea of self-defense is not available to one who uses language so opprobrious that a reasonable man would expect to bring on a physical encounter, and which did actually contribute to bringing it on."

Exception is taken to this definition of manslaughter given to the jury in the charge: "Now, the other unlawful killing, gentlemen, is called manslaughter, and it consists in this: the unlawful killing of a human being without malice, without that black condition of the heart that I have described to you, but in sudden heat and passion, upon a legal provocation offered by the dead man.   That is to say, if Elbert Copeland assaulted Hunter, and Hunter became hot and passionate, and in that condition of the heart he struck and killed Elbert Copeland, in sudden heat and passion, the law denominates that sort of killing manslaughter, and the penalty for that sort of killing is imprisonment for not less than two nor more than thirty years, in the discretion of the Court."   Neither in the exception nor the argument is any error in this definition pointed out, and we are unable to discover any ground upon which defendant could object to it.

The Circuit Judge charged the jury fully on all the issues in the case, and it was manifestly right for him to caution the jury against being led astray into the consideration of other and extraneous issues injected into the cause by counsel.   No issue proper for the consideration of the jury other than those submitted to the jury by the Court has been suggested either in the exceptions or the argument.

The twenty-sixth and last exception imputes error to the Circuit Judge: "Because the defendant, when sentence was

passed upon him was not told to stand up, nor was he asked what he had to say why the sentence of the Court should not be passed upon him. This being required in all cases, especially capital ones." The record does not disclose that the formalities referred to were omitted, and the presumption is that the trial was conducted and the sentence imposed with the formalities required by law.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

*Remittitur in this case held up on application for writ of error to Supreme Court of United States.*